# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JAMES P. RILEY and BOSTON FIREFIGHTERS INTERNATIONAL ASSOCIATION of FIREFIGHTERS, LOCAL 718 <br>                              Plaintiffs, <br><br> v. <br><br> CITY OF BOSTON, MASSACHUSETTS, BOSTON FIRE DEPARTMENT, and PAUL F. BURKE, individually and in his capacity as Commissioner of the Boston Fire Department, <br>                              Defendants. | C.A. No. 1:24-cv-11513 |

## DEFENDANTS' MOTION FOR RECONSIDERATION OF COURT'S ORDER DENYING THE MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

Defendants City of Boston (the "City") and Commissioner Paul F. Burke ("Commissioner Burke") respectfully move this Honorable Court to reconsider its April 18, 2025, order (ECF No. 13) (the "Order") denying the Defendants' motion to dismiss. As grounds therefor, Defendants state that less than a week after this Court issued the Order, an arbitrator in Plaintiff's labor grievance issued a decision upholding Plaintiff's suspension. As part of this decision, the arbitrator made findings of fact that bear on the central element of the test articulated by the Supreme Court in Garcetti v. Ceballos, 547 U.S. 410, 421 (2006)—i.e. whether the disputed communication was made pursuant to Plaintiff's official duties.

The City recognizes that reconsideration of an interlocutory order of this Court is an extraordinary request not expressly contemplated by the Federal Rules of Civil Procedure. Given the circumstances of this case and the decision of the arbitrator, extraordinary relief is warranted.

The Court may consider this motion under Rule 54(b) or its own inherent power to reconsider and should allow the Defendants' motion to dismiss.

## PROCREDURAL BACKGROUND

As alleged in the Complaint, on or about October 11, 2023, Deputy Chief Christopher Burke issued Plaintiff a notice suspending him for four tours of duty.  (Complaint, ¶ 34).  At a subsequent disciplinary hearing, a hearing officer found that the suspension was appropriate and recommended that it be upheld.  (Id. at ¶ 36).  On November 8, 2023, Plaintiff's Union filed a grievance on Plaintiff's behalf appealing the four-tour suspension.  (Id. at ¶ 37).  On January 2, 2024, a hearing officer sustained the suspension after a final grievance hearing, though the hearing officer found that Plaintiff did not violate Rule 18.44(m).  (Id. at ¶ 38).

Following the final grievance hearing, Plaintiff's Union filed a Demand for Arbitration with the American Arbitration Association.  (Exhibit A, Arbitrator Decision and Award, at 11).  A hearing before an arbitrator was held on June 12, 2024, and December 19, 2024.  (Exhibit A, at 1).  The parties submitted post-hearing briefs, and the hearing was declared closed on March 14, 2025.  (Exhibit A, at 1).  The arbitrator's decision and award was issued on April 24, 2025.  (Exhibit A, at 26).

## ARBITRATOR DECISION

The arbitrator determined that the City had just cause to discipline Plaintiff for violation of Boston Fire Department ("BFD") Rule & Regulation 18.44(j) (conduct prejudicial to good order).  (Exhibit A, at 19).  In doing so, the arbitrator made numerous findings of fact based on documentary and testimonial evidence.  Based on Plaintiff's testimony, the arbitrator found that Plaintiff has been a resident of West Roxbury and Hyde Park and "has never lived in Jamaica

Plain." (Exhibit A, at 5). In addition, the arbitrator made findings of fact regarding the defect in front of the Jamaica Plain firehouse:

> Grievant testified that the handicap ramp in front of the firehouse and the apron or driveway were both in disrepair and had been for several years. Members of the public complained about the safety hazards, which Grievant stated were also safety hazards for firefighters. Apparently on some occasions firefighters had put out cones and had also reported some injuries to the public, including falls and a carriage getting stuck. Grievant testified on cross-examination that he personally did not see any falls, injuries or carriages getting stuck. According to Grievant, although he had spoken to Moran, who was the next person up in his chain of command, at least a dozen times, there had been no resolution. Grievant stated that Moran never told him to fill out any form or write to the Chief of the Streets. Grievant also stated that he knew the Chief of the Streets was a cabinet position and, that that position was not within his chain of command. Grievant testified that he was aware Moran had reported the ramp and apron issues to the Facilities Division and that Moran showed him the e-mails he had sent. Grievant testified that he understood the apron/driveway was the BFD's responsibility, but that the road and sidewalks are public ways.
>
> According to the testimony of Rodney Marshall, Chief of Operations Support, BFD, both the apron in front of the firehouse and the handicap ramp that is part of the apron are the property of the BFD. Marshall was aware that Grievant had reported the ramp and apron issues to Moran, and also testified that although Moran had reported the condition issues they had not yet been fixed because of budgetary constraints. When asked why he did not use the City's 311 system for reporting non-emergency issues, Grievant stated he did not because there had been multiple complaints and no resolution. He also stated that firefighters had told members of the public to report the issues through that system, but he did not know whether any people had made reports.

(Exhibit A, at 8–9).

The arbitrator's decision also cited two provisions of the BFD Rule & Regulation bearing on Plaintiff's responsibilities as a firefighter. BFD Rule & Regulation 18.17(b) provides that a "member shall promptly notify his/her immediate superior of [defects in apparatus, equipment, or other department property or damage to same] which he has personal knowledge of, or with which he is in any way connected." Separately, BFD Rule & Regulation 18.19 provides:

> If a member observes any street or highway condition liable to cause delay or accident to apparatus, or if he knows of any occurrence or condition of affairs

which in the public interest should be communicated to another public department, he shall promptly inform his/her immediate superior thereof and such superior shall telephone the information to the District Chief and the public department concerned. The officer notified shall submit Form GF65 to the proper authority.

(Exhibit A, at 30) (Exhibit B, BFD Rules and Regulations).

The arbitrator rejected Plaintiff's arguments that the September 26, 2023, email should "be afforded First Amendment protection because it was private speech by a public employee about a matter of public concern." (Exhibit A, at 23–24). The arbitrator determined instead that the email was sent as part of Plaintiff's routine duties as a public employee, and not as a private citizen. (Exhibit A, at 23–24). The arbitrator reasoned that the "apron and ramp in front of the firehouse, which was BFD property, was properly subject to being reported up the chain of command as part of [Plaintiff]'s duties as a firefighter." (Exhibit A, at 23). Even if the reported defect was one in the public way, the arbitrator noted that Plaintiff was still obligated to report on that condition as part of his routine duties as a firefighter. (Exhibit A, at 23–24). Specifically, the arbitrator cited BFD Rule & Regulation 18.19, according to which any firefighters who "observes any street or highway condition liable to cause delay or accident to apparatus" is required to "promptly inform his/her immediate superior thereof." (Exhibit A, at 24).

At the same time, the arbitrator reduced Plaintiff's suspension from four tours of duty to two tours of duty. (Exhibit A, at 25). In light of Plaintiff's disciplinary history and comparator evidence, the arbitrator reasoned that a two-tour suspension would "comport with the concept of progressive discipline and accomplish the goals of employing discipline that is corrective and administered in a consistent manner." (Exhibit A, at 25–26).

**ARGUMENT**

## I.    THE COURT SHOULD RECONSIDER ITS ORDER DENYING THE MOTION TO DISMISS.

While motions for reconsideration in federal court are most frequently analyzed under Fed. R. Civ. P. 59 or 60, see, e.g., Perez-Perez v. Popular Leasing Rental, Inc., 993 F.2d 281, 284 (1st Cir. 1993), those rules apply to challenges to final judgments.  The First Circuit has indicated that "interlocutory orders . . . remain open to trial court reconsideration."  Geffon v. Micrion Corp., 249 F.3d 29, 38 (1st Cir. 2001).  "The district court has discretion to reconsider previous rulings."  Id. (citing Bethlehem Steel Exp. Corp. v. Redondo Constr. Corp., 140 F.3d 319, 321 (1st Cir.1998)).  Interlocutory orders that do not constitute final judgments are more properly analyzed under the district court's "inherent power to reconsider its orders in light of changed circumstances," see, e.g., Burns v. Watler, 931 F.2d 140, 145 (1st Cir. 1991), or under Rule 54(b), see Avila v. Valentin-Maldonado, 2010 WL 11678922, at *1 (D.P.R. Aug. 6, 2010); Barbaro v. United States on Behalf of Fed. Bureau of Prisons, 2007 WL 9805534, at *1 (D. Mass. May 23, 2007) (Wolf, J.) (citing Rule 54(b) for the proposition that a "district court has the authority to reconsider interlocutory orders at any time before final judgment").

Decisions of the district court considering motions to reconsider interlocutory orders have looked for "extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice."  Barbaro, 2007 WL 9805534, at *1 (quoting Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 817 (1988)); Antony v. Duty Free Americas, Inc., 705 F. Supp. 2d 112, 114 (D. Mass. 2010) (Gorton, J.); Shea v. Millett, 2019 WL 11541167, at *1 (D. Mass. Oct. 31, 2019) (Burroughs, J.).  The City suggests that denying the motion to dismiss would work a manifest injustice in light of the decision of the arbitrator and her findings of fact with respect to Plaintiff's official job duties.

## II.    THE FACTUAL FINDINGS OF THE ARBITRATOR ARE ENTITLED TO GREAT WEIGHT.

The Collective Bargaining Agreement ("CBA") between Plaintiff's Union and the City provides that "[e]mployees shall not be disciplined nor discharged except for just cause." (Exhibit C, Collective Bargaining Agreement, at 25). The CBA includes an article for the processing of grievances, defined as "any dispute arising out of or concerning the interpretation or application of any provision of this Agreement." (Exhibit C, at 22–25). Step 4 of the grievance procedure permits the Union to submit the grievance to arbitration. (Exhibit C, at 24). The CBA provides that "[t]he decision of the arbitrator shall be final and binding upon the parties . . . ." (Exhibit C, at 24).

Under the terms of the CBA, the arbitrator's determination that there was just cause to support BFD's suspension of Plaintiff is "final and binding upon the parties." Although whether the suspension violated Plaintiff's First Amendment rights was not an issue that was directly submitted for adjudication by the arbitrator, the arbitrator did address arguments by Plaintiff that the September 26, 2023, email should be afforded First Amendment protection. In doing so, the arbitrator made findings of fact relating to the standard announced in Garcetti v. Ceballos, 547 U.S. 410, 421 (2006), in which the Supreme Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Similarly, under the two-step inquiry developed by the First Circuit to determine whether speech is made pursuant to the employee's official duties, "[f]irst, a court must ask, 'what are the employee's official responsibilities?,' and second, 'was the speech at issue made pursuant to those responsibilities?'" Decotiis v. Whittemore, 635 F.3d 22, 31 (1st Cir. 2011) (quoting Mercado-Berrios v. Cancel-Alegria, 611 F.3d 18, 26 (1st Cir. 2010)).

In analyzing a § 1983 claim arising from disciplinary action by an employer that was also adjudicated by an arbitrator in a labor grievance, the First Circuit has stated that while "the arbitrator's factual findings are not dispositive, they may be entitled to great weight."  Wojcik v. Massachusetts State Lottery Com'n, 300 F.3d 92, 105 (1st Cir. 2002) (citing McDonald v. City of W. Branch, 466 U.S. 284, 292 n.13 (1984)); see also Rae v. Massachusetts Bay Transp. Auth., 535 F. Supp. 3d 67, 78 (D. Mass. 2021) (Saris, J.) (same for First Amendment retaliation claim). Cf. 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 265 (2009) (disclaiming older Supreme Court cases that "included broad dicta that were highly critical of the use of arbitration for the vindication of statutory antidiscrimination rights" as "rest[ing] on a misconceived view of arbitration that this Court has since abandoned").  Moreover, extrinsic documents like the arbitrator's decision may be considered by this Court without converting a motion to dismiss into a motion for summary judgment where the authenticity of the documents is not disputed by the parties or the documents are official public records, central to the plaintiff's claim, or sufficiently referred to in the complaint.  Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013) (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).

### III.    THIS COURT SHOULD CONCLUDE THAT THE SEPTEMBER 16, 2023, EMAIL WAS SENT AS PART OF PLAINTIFF'S OFFICIAL DUTIES.

In concluding that the allegations in the Complaint plausibly sets forth citizen rather than professional speech, this Court reasoned that "[s]ending [the September 26] email does not appear to have been within Riley's official responsibilities, and the subject matter of the email—namely, escalating concerns regarding a need for sidewalk repair—is not traditionally thought of as within a firefighter's employment duties, nor is it alleged to have been part of Riley's here." (Order at 13).  This Court also determined that the "ultimate conclusion that the sidewalk was and had long been in need of repair required no 'special knowledge,' as evidenced by the fact

that the Complaint alleges that several non- firefighter citizens were also engaged in communications with the city to try to fix the problem (which also lends credence to the notion that there is a "citizen analog" to Riley's speech)."  (Order at 14).

This Court should reconsider its Order in light of the arbitrator's decision.  Most notably, the arbitrator identified specific BFD rules and regulations that answer the question "what are the employee's official responsibilities?"  Decotiis, 635 F.3d at 31.  Under BFD Rule & Regulation 18.17(b), Plaintiff had an obligation to report "defects in apparatus, equipment, or other department property," while under BFD Rule & Regulation 18.19, he was required to do the same for any "street or highway condition liable to cause delay or accident to apparatus."  As the arbitrator concluded, the defect in front of the firehouse was "properly subject to being reported up the chain of command as part of [Plaintiff]'s duties as a firefighter."  (Exhibit A, at 24).

Defendants acknowledge that BFD Rules & Regulation 18.17(b) and 18.19 speak to firefighters' obligation to report defects and highway conditions to their "immediate superior." However, the arbitrator properly determined that the defect in front of the Jamaica Plain firehouse was subject to being reported up the chain of command under BFD Rules & Regulations without an excessively fastidious focus on the "immediate superior" language.  The fact that the Rules & Regulations require firefighters to report defects to their immediate superiors does not mean that firefighters act outside of their official responsibilities for purposes of the Garcetti test when they grow impatient with department procedures and report the same defects to officials above their immediate superior.  For the court to rule otherwise would effectively immunize public employees against discipline for acts of bypassing the chain of command.

The First Circuit's decision in <u>Alberti v. Carlo-Izquierdo</u>, 548 Fed. Appx. 625 (1st Cir. 2013), is instructive.  In <u>Alberti</u>, the plaintiff was the director of the family nurse practitioner ("FNP") program at a school of nursing.  <u>Id.</u> at 634.  The plaintiff, in her own words, "bypassed the chain of command" by sending a letter to the chancellor of the university's medical science campus complaining that one of her nursing students had committed HIPAA violations and that fellow faculty members and the dean of the school of nursing were interfering with her work as FNP director.  <u>Id.</u>  The plaintiff was removed from her position of director after the dean of the school of nursing requested the termination, citing a "lack of trust" and the letter bypassing the chain of command.  <u>Id.</u>  On appeal, the First Circuit rejected the plaintiff's argument that "by bypassing the chain of command with her grievances, she was not speaking as an employee on a matter related to her employment, but as a private citizen on a matter of public concern."  <u>Id.</u> at 638.  Instead, the First Circuit reasoned that the Plaintiff's "complaints . . . relayed to the Chancellor were made in her supervisory capacity over [her student], as her teacher, and in her capacity as FNP program director, concerning the administration of the FNP program."  <u>Id.</u> Here, as in <u>Alberti</u>, Plaintiff was rightly disciplined for bypassing the chain of command by sending a communication that relayed complaints about the administration of his workplace.

In addition, the arbitrator found that Plaintiff does not live in Jamaica Plain and has not personally seen any "falls, injuries or carriages getting stuck" in the defect in front of the firehouse.  (Exhibit A, at 8).  These findings bear on the <u>Decotiis</u> factors discussed in the Order, and particularly "whether the employee's speech derived from special knowledge obtained during the course of her employment."  635 F.3d at 31 (citing <u>Williams v. Dallas Ind. Sch. Dist.</u>, 480 F.3d 689, 694 (5th Cir. 2007)).  The arbitrator's findings indicate that were it not for Plaintiff's job at the Jamaica Plain firehouse, the defect likely would have never come to his

attention.  Finally, contrary to the allegations in the Complaint (¶ 16), the arbitrator found that although firefighters had told members of the public to report the defect through the 311 system, Plaintiff "did not know whether any people had made reports."  (Exhibit A, at 8–9).  Taken together, the arbitrator's findings of fact with respect to Plaintiff's official job duties tip the scales in favor of a determination that the email was sent in Plaintiff's professional capacity.

## CONCLUSION

For the reasons set forth herein, the City respectfully requests that this Honorable Court reconsider its decision in the Order, allow the Defendants' motion to dismiss, and grant such other and further relief as it deems just and proper.

Respectfully submitted:

**DEFENDANTS CITY OF BOSTON and PAUL F. BURKE**

By their attorney:

Adam Cederbaum
Corporation Counsel

/s/ Randall F. Maas

Randall Maas (BBO# 684832)
Assistant Corporation Counsel
City of Boston Law Department
City Hall, Room 615
Boston, MA  02201
(617) 635-4042
Randall.Maas@boston.gov

**<ins>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1</ins>**

I hereby certify that on May 14, 2025, I emailed opposing counsel about conferencing the motion to dismiss.  Opposing counsel was not available between May 14 and May 16 to conference the motion by phone.  I also certify that I explained the purpose of the motion and offered to speak after business hours or answer any questions by email.

　　*/s/ Randall Maas*　　
Randall Maas

**<ins>CERTIFICATE OF SERVICE</ins>**

I hereby certify that on **May 16, 2025**, this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

/s/  Randall F. Maas
Randall F. Maas

Date:  May 16, 2025